# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jeffrey J. Walker and Mary K. Walker,

                Plaintiffs,

     v.

Bank of America, N.A., BAC Home Loans
Servicing, L.P., and Wells Fargo Bank, N.A.,
as Trustee for the Certificate Holders of
Banc of America Securities, Inc. Alternative
Loan Trust 2007-2,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-783 ADM/JSM

_____

Jon Erik Kingstad, Esq., Oakdale, MN, on behalf of Plaintiffs.

Andre Hanson, Esq., and Leaf Dilts McGregor, Esq., Fulbright & Jaworski LLP, Minneapolis,
MN, on behalf of Defendants.

_____

## I.  INTRODUCTION

On September 4, 2013, the undersigned United States District Judge heard oral argument

on Defendants Bank of America, N.A. ("Bank of America") and Wells Fargo Bank, N.A., as

trustee for the certificate holders of Banc of America Securities, Inc. Alternative Loan Trust

2007-2's ("Wells Fargo") Motion to Stay or in the Alternative for Summary Judgment [Docket

No. 30].  Plaintiffs Jeffrey J. Walker ("Mr. Walker") and Mary K. Walker ("Ms. Walker")

oppose the motion.  For the reasons set forth below, the motion to stay is denied, and the motion

for summary judgment is granted.

## II.  BACKGROUND

Mr. Walker has worked as a real estate developer and broker for approximately ten years.

Walker Aff., July 22, 2013 [Docket No. 37] ("Walker Opp'n Aff.") ¶ 2; Leon Decl., July 1, 2013

[Docket No. 35] Ex. F. ("Walker HAMP Aff.").  In 2006, he worked with a contractor to develop several residential properties in Woodbury, Minnesota, one of which was the property subject to the mortgage at issue in this action.  Shortly after building a house on the property, the contractor declared bankruptcy.  Walker Opp'n Aff. ¶¶ 3-4.  The Walkers took ownership of the house in satisfaction of the contractor's debts, obtained a loan to complete the house, and began living there.  Id. ¶¶ 4-6.

On March 29, 2007, Mr. Walker refinanced his existing loans with a "jumbo" $833,500 mortgage loan from Bank of America.  Leon Decl. ¶ 6, Ex. A (the "Note"); Walker Opp'n Aff. ¶ 28.  Because the Walkers had substantial assets in 2007, Bank of America offered the credit as a "no document loan," which required minimal verification of the Walkers' income.  See Walker Opp'n Aff. ¶ 9.  Signing jointly, the Walkers secured the loan by granting Bank of America a mortgage interest in their newly-improved property.  Leon Decl. Ex. B (the "Mortgage").  Defendant BAC Home Loans Servicing, L.P. ("BAC"), serviced the loan.[1]  The Walkers agreed Bank of America could transfer the Note without notice.  Note at 1; Mortgage ¶ 20.

Two months later, on May 24, 2007, Bank of America assigned the Note to Wells Fargo.  Leon Decl. ¶ 7.  BAC continued to service the loan.  Id. ¶ 8.

In September 2008, the Walkers defaulted on their mortgage loan.  Mr. Walker's income decreased significantly, as the real estate market experienced a severe downturn.  Walker HAMP Aff.  Mr. Walker was also diagnosed with cancer shortly after obtaining the loan, and the resulting treatment costs exacerbated his financial difficulties.  Id.

---

[1]  At the time, BAC was a wholly-owned subsidiary of Bank of America; it merged into the Bank of America in July 2011.  Id. ¶ 8.

On October 6, 2008, the Walkers received two form letters from Bank of America. The first was from the "Homeownership Retention" department, which asked the Walkers to contact a loan counselor to discuss the potential for a "workout option." Walker Opp'n Aff. Ex. B. The letter also warned that debt collection activity, including foreclosure, could continue while the Walkers sought debt relief. Id. The second letter stated, "Your loan is now in a default status." Leon Decl. Ex. I. Bank of America stated in the letter that because the Walkers had not secured a payment plan, any payments "less than the total amount due" were not acceptable and could be returned. Id.

On October 15, 2008, Bank of America's "Home Ownership Retention Team" sent a third letter, advising the Walkers they may "qualify for a new program" to help them retain their home. Walker Opp'n Aff. Ex. C. Included with the letter was a pamphlet detailing possible assistance options, including "Repayment/Forbearance Plans," "Loan Modifications," and "Short payoff or Settlement." Id. Presumably, Bank of America offered some or all of these options to its customers because it had received funds through the Troubled Asset Relief Program (TARP), one condition of which was participation in Home Affordable Mortgage Program (HAMP).

Mr. Walker called the phone number provided, and spoke with a loan counselor. According to Mr. Walker, this Bank of America employee told the Walkers they would not qualify for any loan assistance until they were "behind or delinquent three payments" on the loan. Walker Opp'n Aff. ¶ 16. Bank of America offers no evidence to dispute this representation. The Walkers claim that despite being able to potentially make a late mortgage payment, they relied on the loan counselor's statement and chose not to make loan payments in September, October, or November 2008. Id. ¶¶ 13, 16.

Bank of America claims that it sent a letter on October 22, 2008, which again notified the Walkers of their default. Leon Decl. Ex. J. The letter also stated that if the Walkers did not cure the default by paying the full amount past due within 30 days, Bank of America could accelerate the Note and sell the mortgaged property. Id. The Walkers deny receiving this letter. Walker Opp'n Aff. ¶ 29.

On November 18, 2008, the Walkers submitted a "Home Affordable Mortgage Program Hardship Affidavit" (referred to previously as the "Walker HAMP Affidavit") to Bank of America. In his affidavit and attached letter, Mr. Walker explained his financial and medical struggles, and requested a loan modification under HAMP. Walker HAMP Aff. On January 28, 2009, Bank of America denied the Walkers' application, stating the Walkers lacked sufficient income "to meet affordability requirements." Walker Opp'n Aff. Ex. D. Bank of America suggested the Walkers list their home for sale. Id. There is no evidence proffered that the Walkers did so at this time.

The Walkers maintain that because they had not received a notice of intent to accelerate, they "trusted and relied upon Bank of America that [they] were not in default and had additional time to avoid foreclosure by loan modification or other loan workout options." Walker Opp'n Aff. ¶¶ 19, 21. The Walkers also state that although they had no income from October 2008 to July 2010, they owned several valuable assets, including two airplanes, construction equipment, a motorcycle, and a boat. Id. ¶ 20.

On June 30, 2009, Bank of America notified the Walkers their matter was referred to legal counsel to initiate foreclosure proceedings. Leon Decl. Ex. K. Bank of America informed the Walkers that they could still avoid foreclosure by paying "the total due" or by qualifying for

a loan workout, but that the foreclosure action would continue regardless.  Id.  Shortly thereafter, the Walkers consulted a foreclosure counselor at the Washington County Housing Redevelopment Authority.  Walker Opp'n Aff. ¶ 22.  Through this process, they learned that their "jumbo" mortgage loan exceeded HAMP eligibility limits, and thus could not be modified under the program.  Id. ¶¶ 23, 28.

On September 16, 2009, Bank of America executed a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage (the "First POA"), in which it assigned a limited power of attorney to Wilford & Geske, P.A., to foreclose on the Walkers' mortgage.  Compl. [Docket No. 1] Ex. A.  Bank of America recorded the First POA on September 25, 2009.  Id.  On or about October 19, 2009, the Walkers received a notice for the foreclosure sale of their property, which was scheduled for November 19, 2009.  Walker Opp'n Aff. Ex. E.  Apparently, the Walker's Washington County foreclosure counselor contacted Bank of America on their behalf and obtained a cancellation of the foreclosure sale.  Walker Opp'n Aff. ¶ 25.  The Walkers learned of the cancellation through their counselor.  Id.

On May 6, 2010, Bank of America restarted the foreclosure process.  Wilford & Geske notified the Walkers it had been retained by BAC and Wells Fargo.  Wilford & Geske stated the Walkers had defaulted on their loan, and further stated that the full balance of the loan, $939,566.67, was the amount due.  Hanson Decl., July 1, 2013 [Docket No. 34] ("Hanson Decl.") Ex. 7.

On May 21, 2010, Wells Fargo executed its own Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage (the "Second POA"), in which it authorized Wilford & Geske to foreclose the Walkers' mortgage.  Compl. Ex. B.  Then, on May 24, 2010—three days

after Wells Fargo executed the Second POA—Wilford & Geske executed an Assignment of Mortgage on behalf of Bank of America (the "AOM") that assigned the mortgage to Wells Fargo.[2]  Compl. Ex. C.  Wells Fargo recorded both the AOM and the Second POA on May 25, 2010.  Compl. Exs. B, C.

Shortly thereafter, Wilford & Geske began the foreclosure by advertisement process, posting weekly notices of the foreclosure sale in the Forest Lake Times.  Hanson Decl. Ex. 4, at 13-14.  On June 3, 2010, the Walkers received notice of foreclosure by personal service.  Id. at 15.  On July 9, 2010, the Sheriff's foreclosure sale took place, and Wells Fargo purchased the Walkers' property for $543,375.  Hanson Decl. Ex. 4, at 20-21.  During the following six month redemption period, the Walkers listed their home for sale but received no offers.  They did not redeem the property.  Walker Opp'n Aff. ¶ 42.  The Walkers have not made a payment on their mortgage loan since September 2008, and continue to live in the house.  See Leon Decl. ¶ 14; Walker Opp'n Aff. ¶ 44.

On March 30, 2011, the Walkers initiated this action against Defendants.  See Compl.  The Walkers allege eight claims: (1) breach of contract; (2) "gross negligence"; (3) breach of the duty of good faith and fair dealing; (4) wrongful foreclosure; (5) abuse of process; (6) malicious prosecution; and (7) defamation.  The Walkers also seek an injunction preventing Defendants from entering or taking possession of the property, a declaratory judgment setting aside the foreclosure sale, and damages.  Compl. ¶¶ 29-80.

On February 21, 2013, Wells Fargo initiated an action against the Walkers in Washington

---

[2]  The Second POA lists "5/24" as the date Bank of America assigned the mortgage to Wells Fargo, which suggests Wilford & Geske retroactively dated this document.  Id.

County District Court, in which Wells Fargo requests a rescission of the July 9, 2010, foreclosure sale. See Wells Fargo Bank, N.A. v. Walker, No. 82-CV-13-967 (Washington Cnty. Dist. Ct. Feb. 21, 2013). Before oral argument on the present motion in federal court, Wells Fargo moved for judgment on the pleadings in the state court action. On September 25, 2013, Judge Mary Hannon of the Washington County District Court issued an order staying the state action pending the resolution of this federal action. See Letter, Sept. 27, 2013 [Docket No. 45] Ex. 1 ("State Order, Sept. 24, 2013").

## III. DISCUSSION

### A. Colorado River Abstention

With the present motion, Defendants request this Court stay this action pending the resolution of Wells Fargo's state court rescission action. Under the Colorado River doctrine, federal courts may exercise discretion and abstain from exercising jurisdiction when a parallel state action exists, and "exceptional circumstances warrant abstention." Fru-Con Constr. Corp. v. Controlled Air, Inc., 574 F.3d 527, 534 (8th Cir. 2009) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976)). Generally, however, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817. The United States Supreme Court stated six factors for determining whether "exceptional circumstances" exist, which the Eighth Circuit Court of Appeals has summarized as:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority-not necessarily which case was filed first but a greater emphasis on the

relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 926 (8th Cir. 2006).

Primarily based on the fourth factor, the Court will not abstain from exercising jurisdiction over this action. The state court has expressly abstained from issuing a ruling until the resolution of the federal court action, effectively giving this action priority. See State Order, Sept. 24, 2013. The state court also found that the relative progress of the federal action exceeds that of the state court action: "In comparison to the federal case – which is two years older – this case has just begun." Id. at 4. Relevant to the third Colorado River factor, the state court observed that staying the state court action would avoid piecemeal litigation, finding the federal court action encompassed a broader range of issues requiring resolution. See id. at 3-4. Given these considerations, a stay of the federal action is unwarranted.

**B. Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure states summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The United States Supreme Court, in construing Federal Rule 56(c), stated in Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986):

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

On a motion for summary judgment, the court views the evidence in the light most

favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving

party has been presented, summary judgment is inappropriate.  Krenik v. Cnty of Le Sueur, 47

F.3d 953, 957 (8th Cir. 1995).  However, the nonmoving party may not "rest on mere allegations

or denials, but must demonstrate on the record the existence of specific facts which create a

genuine issue for trial."  Id.  As a result, the "mere existence" of an alleged factual dispute will

not defeat a properly supported motion for summary judgment . . . ."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  Instead, "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment."  Id.

### 1. Several of the Walkers' Allegations Fail as a Matter of Law

The Walkers' causes of action involve many overlapping allegations, a few of which may

be quickly resolved.  As an initial matter, the Walkers allege Ms. Walker never received proper

service of the Sheriff's notice of foreclosure sale.  Compl. ¶¶ 31, 37, 55.[3]  But, Mr. Walker

admits being served with two copies of the notice, thus fulfilling service requirements for the

Walkers, and the Walkers no longer argue lack of service.  Walker Aff., May 1, 2013 [Docket

No. 24] at ¶ 22; Minn. R. Civ. P. 4.03.  The Walkers also allege James Geske, of Wilford &

Geske, lacked authority to execute the AOM on behalf of Bank of America.  Compl. ¶¶ 40, 49,

63-64.  As has been repeatedly held in this district, mortgagors lack standing to challenge the

---

[3] Plaintiffs also included this allegation in their "wrongful foreclosure" cause of action.
The Court has attempted to organize Plaintiffs' causes of action by their predominant allegations
and arguments, but the organization is not entirely precise.  To the extent the Court addresses a
particular allegation, the same analysis shall apply to every other area of the Complaint in which
the allegation arises.

validity of a subsequent assignment of mortgage. See, e.g., Gerlich v. Countrywide Home Loans, Inc., No. 10-4520, 2011 WL 3920235, at *2-3 (D. Minn. Sept. 7, 2011); Novak v. JP Morgan Chase, N.A., No. 12-589, 2012 WL 3638513, at *6 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013); Quale v. Aurora Loan Servs., LLC, No. 13-621, 2013 WL 3166584, at *1 (D. Minn. June 20, 2013). Finally, the Walkers allege Bank of America failed to notify them when Bank of America assigned the mortgage to Wells Fargo. Compl. ¶¶ 32, 38. But, the Mortgage expressly states the Note "can be sold one or more times without prior notice." Mortgage ¶ 20. According to the Mortgage's terms, notice was not required because Bank of America continued to service the loan after the assignment. See id.

## 2. Breach of contract (Count 1), breach of the covenant of good faith and fair dealing (Count 3)

Plaintiffs' breach of contract claim is premised upon the argument that Defendants failed to provide notice of intent to accelerate the loan in accordance with Paragraph 22 of the Mortgage. Paragraph 22 states the lender shall notify the borrower "prior to acceleration" following any breach by the borrower of the Mortgage's terms. The notice must specify: "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure default" may result in acceleration and a foreclosure sale. Mortgage ¶ 22. Defendants initially argue they provided such a notice in a letter sent October 22, 2008, but as previously discussed, the Walkers deny receiving it.[4] Defendants counter this argument by asserting that

---

[4] Defendants sent a letter to the Walkers on May 6, 2010, which appears to reflect Defendants' understanding that they had already accelerated the loan. The letter informs the Walkers that the total principal and interest remaining on the mortgage loan, in the amount of $939,566.67, is now due. Hanson Decl. Ex. 7. As discussed below, and as the Walkers concede,

receipt of the October 22 notice is immaterial, because Minnesota law prohibits acceleration. Defendants also argue the Walkers functionally received the required notices through other communications.

Any attempt to accelerate the Walkers' loan would have been meaningless under Minnesota law. In Minnesota, a homeowner retains the right to reinstate his or her mortgage loan by paying only the past due amounts, including interest and costs, at any time before the foreclosure. See Minn. Stat. § 580.30; see also Davis v. Davis, 196 N.W.2d 473, 475 (Minn. 1972); Oleisky v. Midwest Fed. Sav. & Loan Ass'n of Minn., 398 N.W.2d 627, 634-35 (Minn. Ct. App. 1986) ("The mortgagor's right to reinstate is absolute, notwithstanding acceleration.").

As a result, the Walkers have failed to demonstrate causation and injury from the claimed lack of notice. The Walkers argue they "could have avoided foreclosure if the defendants had given them Notice of Intent to Accelerate or to foreclose."[5] Pls.' Opp'n at 27-28. However, this argument does not address how receiving a notice of intent to accelerate would have averted a subsequent injury, particularly when this notice could not have had any legal effect. On the other hand, the Walkers admit receiving multiple notices of default and foreclosure, warnings

_____

however, the acceleration was "ineffectually" done. Pls.' Opp'n Summ. J. [Docket No. 40] ("Pls.' Opp'n") 16.

[5] The Walkers also cite multiple decisions from other states in which courts have held a notice of intent to accelerate operates as a condition precedent to foreclosure. See Pls.' Opp'n at 17-18. But these decisions come from jurisdictions in which the acceleration of a home mortgage loan is allowed, putting homeowners at risk of facing the severe consequence of the entire loan becoming due upon default. See, e.g., Ogden v. Gibralter Sav. Ass'n, 640 S.W.2d 232 at 233-34 (Tex. 1982). As discussed, Minnesota law grants home mortgagors the right to reinstate their loan at any time prior to foreclosure, effectively preventing acceleration clauses from taking effect. As a result, these decisions are distinguishable and inapposite to the instant case.

that the foreclosure process would continue despite any efforts to modify the loan, and requests to pay the amount past due to reinstate their loan.  <u>See, e.g.</u>, Walker Opp'n Aff. Exs. B, C; Leon Decl. Exs. H, I, K; Hanson Decl. Ex. 4.  Because a notice of intent to accelerate would not have altered the Walkers' obligations, and because the Walkers received numerous other notices of default and foreclosure, the Walkers have failed to establish causation and injury for their breach of contract claim.

The Walkers also offer their "notice of intent to accelerate" arguments in support of their claim for the breach of the covenant of good faith and fair dealing.  <u>See</u> Pls.' Opp'n at 19.  As discussed above, the Walkers' arguments in this regard fail for want of causation or injury.  The Walkers also fail to demonstrate how the lack of a notice of intent to accelerate frustrated the Walkers' ability to make payments in accordance with the Mortgage.

### 3. Gross Negligence (Count 2)

For their second claim, the Walkers allege Defendants committed "gross negligence."  In the Complaint, the Walkers plead scattershot allegations of Defendants' alleged failure to provide notice of the assignment of mortgage, notice of the intent to accelerate, and James Geske's lack of authority to execute the AOM on behalf of Bank of America, among other things.  For the reasons stated above, these allegations fail to establish a viable claim.

The Walkers attempt to expand their gross negligence claim by arguing unpled theories of liability in their opposition memorandum.  Specifically, the Walkers argue Defendants owed them a fiduciary duty, and that Defendants breached this duty.  This argument is an apparent attempt to satisfy the independent duty rule, which provides that "when a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for

12

exceptional cases in which a breach of contract constitutes or is accompanied by an independent tort." Russo v. NCS Pearson, Inc., 462 F. Supp. 2d 981, 994 (D. Minn. 2006) (internal quotation omitted). The Walkers cite two possible sources for a fiduciary duty: (1) Minn. Stat. § 580.11, which allows a mortgagee to purchase mortgaged property only "fairly and in good faith"; and (2) Paragraph 22 of the Mortgage, which includes covenants allegedly establishing a special relationship between the parties. The Walkers argue Defendants breached this duty by failing to notify the Walkers of the cancellation of the November 19, 2009, foreclosure sale in accordance with Minn. Stat. § 580.07. The Walkers further argue Defendants failed to inform the Walkers the property could be sold for as little as $543,500 at the July 9, 2010, foreclosure sale.[6] The Walkers also argue Defendants published notice of the foreclosure in a newspaper 30 miles from the property, which failed to properly inform the public of the sale. If the public had received proper notice, the Walkers argue, it would have increased competition and thus raised the ultimate foreclosure sale price.

Defendants respond that the Walkers are attempting to impose a duty of care where none exists, thereby converting a contractual claim into a tort. Defendants also argue Paragraph 22 includes form language that other judges in this district have found does not impose a fiduciary duty. See generally Hanson Supp. Decl. [Docket No. 43].

Because the Walkers have not demonstrated the existence of a fiduciary or other independent duty, their claim of negligence fails as a matter of law. The Walkers argue that

---

[6] The Walkers also argue Defendants incorrectly provided a notice of foreclosure sale which told the Walkers they would have to repay the entire amount of the loan to redeem their property. However, as Defendants note, Minn. Stat. § 580.041, subd. 2 mandated the language provided to the Walkers in their notice of foreclosure sale, and the legislature did not amend this language until after July 2010.

recent decisions by the Eighth Circuit and this district court—which have held Minn. Stat. §

580.11 does not create a fiduciary duty—are "in derogation of Minnesota common law which

precludes a trustee from purchasing the property of his beneficiary (or <u>cestui que trust</u>)."  Pls.'

Opp'n at 21 (citing <u>Cox v. Mortg. Elec. Registration Sys., Inc.</u>, 685 F.3d 663, 669-70 (8th Cir.

2012)).  Despite the Walkers' labeling of these decisions as a "derogation," they do not explain

how Eighth Circuit decisions have misinterpreted or contradict Minnesota law.  Following the

Eighth Circuit precedent stated in <u>Cox</u>, this Court finds Minn. Stat. § 580.11 does not impose a

fiduciary duty on Defendants.

Similarly, the Walkers' argument that the notice and sale requirements in Paragraph 22 of

the Mortgage constitute "special circumstances" which create a fiduciary duty is unavailing.

Several other mortgages have used the same language found in Paragraph 22, yet there is no

precedent in this district for recognizing a fiduciary duty as arising from the inclusion of such a

provision.  <u>See, e.g.</u>, <u>Tatone v. Suntrust Mortg.</u>, 857 F. Supp. 2d 821, 837-38 (D. Minn. 2012);

<u>see also</u> Hanson Supp. Decl. (submitting additional decisions).  Routine notice provisions do not

by themselves create a fiduciary duty, and the Walkers offer no law or evidence indicating this

case deviates from the standard rule that "lenders bear no fiduciary duty to borrowers."  <u>See</u>

<u>Roers v. Countrywide Home Loans, Inc.</u>, 728 F.3d 832, 837-38 (8th Cir. 2013) (citation

omitted).

The Walkers attempt to escape this conclusion by further arguing that Bank of America's

communications regarding a possible loan modification invited the Walkers to trust and rely on

the bank, thus creating a fiduciary duty.  <u>Roers</u>, 728 F.3d at 837-38 (observing fiduciary duty

may arise when factors establishing a "special relationship" are present).  The Walkers argue

they withheld three mortgage payments as a result of advice from a Bank of America employee, and assumed they would receive a foreclosure warning if it appeared the loan modification would not succeed. All the while, the Walkers argue, Bank of America knew but failed to tell the Walkers that their loan did not qualify for HAMP assistance.

This line of argument is unpersuasive. There is ample documentary evidence that Defendants repeatedly informed the Walkers that although they could attempt to obtain a loan modification, these efforts would not delay the foreclosure process. See, e.g., Walker Opp'n Aff. Ex. B ("Please be advised that during consideration for any alternative collection activity will continue. This could include foreclosure proceedings . . . ."); Ex. C, at 3 ("Normal collections procedures, which could include a repossession or foreclosure, will continue on your loan until a workout option is approved."); Leon Decl. Ex. H (same language as Walker Opp'n Aff. Ex. B); Ex. K (". . . [T]he above referenced loan is being referred to our legal counsel to initiate foreclosure . . . Please be aware that foreclosure action will continue while your loan is under review for a loan workout."). As a result, no genuine question of fact as to whether Defendants invited the Walkers to rely on them in a "confidential relationship." See Roers, 728 F.3d at 837-38 (holding no special relationship existed even though lender representative offered to "quarterback" a financing arrangement and induced a reluctant plaintiff to mortgage certain properties). On the contrary, Defendants repeatedly warned the Walkers not to rely on the possibility of a loan modification.

Having failed to establish an independent duty of care, the Walkers cannot state a claim for negligence. Even if the Walkers had established a duty of care, the alleged breaches of this duty would not support a claim. Minn. Stat. § 580.07 requires notice for the postponement of a

foreclosure sale, and imposes less rigorous notice requirements on the mortgagor as a reflection

of the delay of sale.  In this case, Defendants completely cancelled the first foreclosure sale, and

initiated a new, separate foreclosure by advertisement along with the more rigorous notices that

process requires.  Also, as the Walkers themselves concede, mortgagees are entitled to bid on

foreclosed property at a price lower than the redemption amount.  See Petition of Nelson, 495

N.W.2d 200, 202 (Minn. 1993) ("Inadequacy of price by itself is generally insufficient to set

aside an execution sale.").  And while the Forest Lake Times may not have been the best

possible publication in which to print the foreclosure sale notice, use of this publication satisfied

the law.  The Forest Lake Times is approved by the Minnesota Secretary of State for such legal

notices, and the newspaper operates and distributes in the same county as the Walkers' property.

See Bland v. Deutsche Bank Nat. Trust Co., No. 13-758, 2013 WL 4519423, at *2-3 (D. Minn.

Aug. 26, 2013); Schulz v. Wells Fargo Bank, N.A., No. 12-2147, 2012 WL 6591457, at *2 (D.

Minn. Dec. 18, 2012); Minnesota Secretary of State, Legal Newspapers,

http://www.sos.state.mn.us/index.aspx?page=98 (listing approved newspapers).

### 4. Wrongful Foreclosure (Count 4)

The Walkers next claim Defendants conducted a wrongful foreclosure primarily because

Bank of America executed the AOM in favor of Wells Fargo three days after Wells Fargo

executed the Second POA, which authorized Wilford & Geske to foreclose on the mortgage.  See

Compl. ¶¶ 59-62.  The Walkers do not dispute that Wilford & Geske properly recorded the

Second POA before initiating foreclosure.  See Walker Opp'n Aff. Ex. H (noting recording of

Second POA on May 25, 2010).  Instead, the Walkers argue Wells Fargo did not have an interest

in their mortgage at the time Wells Fargo executed the Second POA, rendering the subsequent

foreclosure void.

Defendants view the execution of the Second POA as the only "real issue" relating to the validity of the foreclosure sale. Defs.' Mem. Supp. Summ. J. [Docket No. 33] 18. Defendants concede Minnesota courts have recently affirmed the necessity of strict compliance with non-judicial foreclosure laws. See Ruiz v. 1st Fid. Loan Servicing, LLC, 829 N.W.2d 53, 57-58 (Minn. 2013) (requiring strict compliance with regard to Minn. Stat. § 580.02 requirements). However, Defendants argue that this specific set of facts, in which an assignee executes a power of attorney before the lender actually assigns the mortgage, is a matter of first impression in this district. Defendants rely on Minn. Stat. § 580.05, which states:

> When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Defendants argue the statute only requires a power of attorney to be properly recorded prior to the foreclosure sale; anything further would impose requirements where none exist. Because Wells Fargo properly recorded the AOM and the Second POA, and because these documents were accurate at the time of recording, Defendants argue the Walkers suffered no prejudice and the validity of the sale remains intact.

Although Defendants clearly erred in submitting the documentation, it does not affect the validity of the foreclosure sale at issue. After the parties submitted their briefing in this matter, Judge Frank of this district issued a decision addressing a similar situation. See Bland, No. 13-758, 2013 WL 4519423, at *3. In Bland, the assignee executed a power of attorney about ten

days before the assignment of mortgage was executed.  Id.  Judge Frank held, "While it is indeed troublesome that the FDIC did not execute a written assignment of the mortgage to Defendant . . . until after Defendant executed the Power of Attorney . . . the relevant documents were recorded simultaneously and do not appear to violate the requirements of Minnesota Statutes Section 580.05 on its face."  Id.  The court reached this decision in part because it appeared from the public record that the foreclosing law firm did indeed act with the assignee's authority.  Id.

The Court agrees with the conclusion reached in Bland.  Decisions interpreting prior iterations of § 580.05 have held that the primary purposes of the statute are to "prevent unauthorized foreclosures, and perhaps unnecessary burdens upon the debtor, as well as to protect the mortgagor and subsequent lienholders."  Quevli Farms v. Conner, 224 N.W. 264, 265 (Minn. 1929) (interpreting Minn. Stat. Ch. 83, § 9606 (1927) (amended 1986)).[7]  As a result, courts have allowed some flexibility as to the title and precision of the document reflecting the authority to foreclose.  Courts have instead focused on whether the document reflects an actual intent to convey such authority, and whether the document was properly recorded.  See, e.g., Peaslee v. Ridgway, 84 N.W. 1024, 1025 (Minn. 1901).  In Peaslee, the plaintiff challenged a power of attorney document which misstated the page of the record book in which the mortgage was recorded.  Id. at 289.  The court rejected this challenge, holding, "An informal defect of the nature of that shown in this case is not fatal to [the document's] validity or sufficiency."  Id. at 289-90.

In this case, the record reflects Wilford & Geske's authority to act on behalf of Wells Fargo.  Of equal importance, Defendants properly recorded both the AOM and the Second POA

---

[7] The statute was amended to remove gender-specific pronouns.

before initiating the foreclosure sale, thus preserving the protections intended by the statute. Although the Walkers have identified an error in the foreclosure process, they have failed to demonstrate, in any way, how this error caused them injury. When Defendants recorded the documents at issue, the public record properly identified the agents authorized to foreclose.

### 5. Abuse of Process (Count 5), Malicious Prosecution (Count 6)

The Walkers' claims for abuse of process and malicious prosecution must also fail. To establish a claim for abuse of process, a plaintiff must show: (1) "the existence of an ulterior purpose"; and (2) "the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not." Kellar v. VonHoltum, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997). Similarly, the elements for malicious prosecution are: "(1) the action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of the defendant." Id.

In this case, the Walkers have not established questions of fact with respect to the elements for either claim. The Walkers argue that the Defendants obtaining an eviction judgment against them and then declining to enforce the judgment is evidence that Defendants knew the present action had merit. See Pls.' Opp'n at 34. Refraining from evicting the Walkers while this litigation proceeds does not establish Defendants "have all but admitted the foreclosure was void." Id. As discussed in this Order, Defendants have not admitted the foreclosure was void; on the contrary, Defendants have proffered legitimate arguments. The Walkers cite no other evidence of conduct that might indicate an ulterior purpose, and the

Walkers have submitted no evidence whatsoever of malicious intent. Additionally, the malicious prosecution claim fails because the third element has not been met: a previous lawsuit has not ended in Defendants' favor.

### 6. Defamation (Count 7)

The Walkers have also pled a claim for defamation against Defendants, and this claim is also denied. Under Minnesota law, defamation requires a plaintiff to "prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower him in the estimation of the community." Richie v. Paramount Pictures Corp., 544 N.W.2d 21, 25 (Minn. 1996). "[T]ruth is an absolute defense to a claim for defamation." Moore v. Hoff, 821 N.W.2d 591, 596 (Minn. Ct. App. 2012). In this case, the Walkers allege Defendants committed defamation by publishing a false foreclosure notice. Because the Walkers have not demonstrated how the foreclosure notice was anything other than accurate, this claim fails.

### 7. Damages and Injunctive Relief

Finally, the Walkers argue they have yet to elect whether they are seeking monetary damages or equitable relief in this action, as they have requested both damages and an injunction in the Complaint. Because all claims are dismissed on the merits, the Court declines to reach this issue.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Stay or in the Alternative for Summary Judgment [Docket No. 30] is **GRANTED** in part and **DENIED** in part. The motion for summary judgment is granted and the motion to stay is denied. All claims in the Complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 24, 2013.